BY writing, which the parties signed, the 17th day of april 1782, the plaintiff agreed to let the defendent have a negro man slave named Jacob, for the consideration of 13000 pounds of nett tobacco, to continue in the service of the defendent, as his own, until that quantity of tobacco should he paid; and the plaintiff also agreed, if Jacob should die, or by any other accident he rendered unfit for service, to sustain the loss, and either put a negro of like value in his stead, or pay the 13000 pounds of tobacco, when demanded, and not to force the defendent, in the begining or middle of his crop, to receive the tobacco, so as that the plaintiff might recover his negro again.
The negro, admitted to he a valuable labourer, was put into tbe possession of the defendent.
Early in the year 1786, Richard James contracted with the plaintiff to purchase the negro Jacob for 15000 pounds of tobacco, and to pay 13000 thereof to the defendent in march, when the negro should be delivered to the purchaser, and the residue to the plaintiff at a future day.
About a fortnight before the time appointed for the first payment, James communicated the contract to the defendent, acquainting him that the tobacco would be ready accordingly, but was informed by him, that be would not deliver the negro, before the then present crop should be finished, shewing the written agreement to justify the detention till that time.
The 20th day January, 1787 the parties submitted tbe con-roversy between them, without explaning, in the submission, what was the controversy, to the arbitrament of three men who signed a writing, wliicb they named an award, and which is in *130 these words : we being chosen by John Woodson and Joseph Woodson, to arbitrate and determine a matter in dispute between them, relative to the loan of a quantity of tobacco by John to Joseph, do make our award and determination, as follows: that is to say, that John shall have peaceable possession of Jacob, until Joseph shall redeem him by payment of 13000 pounds of tobacco; and when Joseph shall pay or tender to John that quantity of tobacco then John shall deliver to Joseph the negro Jacob if living, or, if not, then Joseph shall put in Johns possession another negro, of equal value, uutil the above quantity of tobacco shall be paid to John, agreeable to contract, considered, by us in the arbitration.
In january, 1788, the plaintiff brought a bill in equity against the defendent before the county court of Goochland, complaining, that the defendent, by not consenting to surrender Jacob to the man who would have purchased him of the plaintiff, and paid the tobacco due to the defendent, in march, had broken the agreement; requiring an account of the profits of Jacob; and praying, that the surplus of those profits, after discharging the annual interest of the 13000 pounds of tobacco, to secure which the slave was pledged, might be applied towards diminishing the principal debt; or that the plan tiff might be otherwise relieved.
The defendent, by his answer, insisted, he was not accountable for the profits of Jacob, by the terms of the agreement; denied that he had any tobacco offered him, when Richard James applied for the delivery of Jacob, declaring, that he never thought himself secure to deliver him, without first receiving the tobacco, not being bound by the contract to do so; and claimed the benefit of the award.
The county court dismissed the bill, awarding costs, against the plaintiff; from which dismission he appealed.
By the court, the 31 day October, 1791:
The award ought not to obstruct the plaintiff in bis application for any redress, to which, if no award had been made, be might have been in titled; because the terms of the award are indecisive, obliging the parties to perform nothing more than what the agreement obliged them to perform; and it ought not, even for preventing its perdition, to be extended by implication so as to determine, that by the agreement, the defendent should retain all the profits of Jacob, in satisfaction for the interest of the tobacco due to him; for such determination, if what fol-loweth be right would have been unjust, insomuch, ut magis pereat quam valeat: and the award, so expounded, would ap *131 prove the defendents interpretation of the agreement, an agreement, which, if that be the true interpretation, pourtrays usurious oppression.
The award then being neglected, the question is, whether a creditor, with whom a pawn, yielding a profit, is deposited, ought to account, not having undertaken by special pact to account, for such profit ? reason seems to dictate, and the precedents recollected, so far as they are applicable to the question, seem to affirm, that the creditor is accountable, a creditor, taking possession of land mortaged to him for payment of his debt, is accountable, altho he do not by covenant in the mortgage, or by other contract written or verbal, oblige himself to account, for the profits of the land, in the eye of reason and equity the debtors ownership of the laud continues, until his right to redeem is superannuated, the security of a debt, not the sale of land, is in contemplation of the parties ; the value of the land is not compared with the debt, for the purpose of immediately paying the one by transferring the other, although the creditor will, at all times when he can, take a mortgage of what is sufficient, that he may he safe, if he should he compelled, finally, to resort to it; the debt is not discharged, but on the contrary, the mortgage usually contains a covenant for payment of it, and sometimes a separate obligation for the payment is granted; and that one should be intitled to his debt,and own the land, and the other be chargeable with the debt, and deprived of the land, at the same time, is inconsistent, the creditor then, entering into the land mortgaged,possesset-h the property of the debtor, and taking the profits, likewise receiveth his property : for the owner of the land is owner of the profits, which it produceth, also, now, when one by right possesseth a thing which is the property of another, the possession is fiduciary—is for the benefitof the owner, hence a creditor, in possession of the land mortgaged, to which he hath a legal title is called a trustee for the debtor, who hath an equitable title, from the nature of this function therefore, without any pact, results the creditors obligation to account for the profits of the land, no less than to restore the land, which produced the profits.
If this doctrine be sound, in the case of laud mortgaged, a creditor seems charged with a similar obligation to account for the profits of a slave, pledged for payment of a debt. .
No english adjudication, in any case, except that of land, resembling the principal case, is recollected.
By the roman civil law, to which recurrence is frequent in questions arising on pigneratitious contracts, the creditor was accountable for the profits of a pledge, without an}r distinction between land aud other things.
*132 Cod. lib. 4. tit. 24. § 1. Ex pignore percepii fructus impu-tantur in debitum ; qui, si sufficiunt ad totum debitum, solvitur actio, et redditur pignus ; fi deditum ¡excedunt, qui supererunt, redduntur ; videlicet, mota actione pigneratitia.
Ibid. § 2. Quod ex pperis ancitlae, vel ex pensionibus damns, quam pignori detineri diets, perceptum est debiti quantitatem relevabit.
Ibid § 3. Creditor, qu ipraediumpignori sibi nexum detinuit, fructus, quos percepit, vel percipere debuit, in rationen exonéran-dihebiti computare, necease habet : et si agrum deteriorem con-stituit, eo queque nomine pigneratitia actione obligavit.
This differs not from the decisions of the english courts of equity, in cases of land mortgaged, unless it be that, by the former the creditor is accountable, not only for profits quos perce-pit, but for profits quos percipere debuit, whereas, by the latter, he is not accountable for profits which he might hare made.
Indeed the defendent must admit himself to be accountable for something, notwithstanding he insists by bis answer,that be was not: for he hath not inserted in the agreement an article for payment of interest, and being bound to restore the pledge, on receiving tbe principal debt,hath no satisfaction for it otherwise than by tbe profits, now, if be be accountable for any profits, he ought to be accountable for the whole profits.
The decree of the county court, disrrfissing the plantiffs bill, is erroneous : reverse it,and let an account be stated of the profits of the slave Jacob, to be applied towards discharging, first the interest of the debt and then the principal if there be a surplus.
Note . tbe court did not consider another question, which seemed intended to be propounded by the bill arising thus; by the agreement, the plaintiff was restrained from offering to pay the debt in the beginning, or middle of a crop : James would have paid the debt for the plaintiff in inarch : that month, by the act of 1785, cap. 63. sect. 43. seemed to the plaintiffs coun-sil to be the time to be accounted the beginning of a crop, now, whether was the defendent bound to receive the tobacco,which, if he had not declared his resolution not to receive it, would have been offered in march? and by his declaration, that he would not deliver up the negro before tbe end of the year, preventing the offer, and so defeating the contract between the plaintiff and James, ought he to make amends to the plaintiff for loss occasioned thereby ? tbe court did not consider tbls question,be-eanse the decree,as it is, was thought to do compleat justice between the parties.